The STATE of Ohio, Appellee,

v.

JUSTICE, Appellant.

[Cite as *State v. Justice* (1994), 92 Ohio App.3d 740.]

Court of Appeals of Ohio,
Wayne County.

No. 2798.

Decided Jan. 19, 1994.

---

*Christopher Greene,* Wayne County Assistant Prosecuting Attorney, for appellee.

*Julia A. Cain,* for appellant.

DICKINSON, Judge.

Defendant Steven Justice has appealed his conviction of domestic violence. That conviction was based upon an alleged attack on his wife, Esther Justice. Although Mrs. Justice initially made an oral statement and a written statement to the Wayne County Sheriff's Department accusing defendant of attacking her, she refused to testify for the state at his trial. As part of the state's case, the trial court permitted a sheriff's deputy to testify regarding Mrs. Justice's oral statement implicating defendant and received a copy of her written statement as an exhibit. In his appeal to this court, defendant has argued that the trial court: (1) incorrectly permitted testimony regarding Mrs. Justice's oral statement over his objection that such testimony was precluded by the hearsay rule; (2) incorrectly received a copy of Mrs. Justice's written statement over his objection that it was precluded by the hearsay rule; and (3) incorrectly denied his motion for acquittal at the close of the prosecution's case. This court affirms defendant's conviction because: (1) his wife's oral statement was properly received by the trial court as an excited utterance pursuant to Evid.R. 803(2); (2) although his wife's written statement was improperly received, that receipt was harmless beyond a reasonable doubt; and (3) the trial court correctly denied defendant's motion for acquittal at the close of the prosecution's case.

I

Defendant was convicted of causing or attempting to cause physical harm to his wife based upon an incident that occurred on August 30, 1992. The couple began arguing at approximately 6:00 a.m. that morning. At approximately 7:45 a.m., someone, apparently a neighbor, telephoned the Wayne County Sheriff's Department and reported that a domestic disturbance was occurring at the Justices' residence. Two deputies were dispatched to their home but, before they arrived, Mrs. Justice appeared at the Rittman Police Department. One of the deputies who had been on his way to the Justices' residence went to the Rittman Police Department instead, arriving there at approximately 8:15 a.m. That deputy, Don McGill, testified that he spoke briefly to the dispatcher and then began interviewing Mrs. Justice.

According to Deputy McGill, Mrs. Justice appeared nervous when he began talking to her. He noticed that her hand was shaking and she appeared upset. She told him she was afraid and she seemed anxious or excited. She began by saying that she and defendant had gotten into an argument and he hit her five or six times "[i]n the head area." Deputy McGill asked her how defendant had struck her and she indicated that he had done so with an open hand. Also, she said that he "had either kicked her or kicked at her two or three times." Finally,

she said that defendant had hit her over the head with a wooden spoon wall ornament.

Deputy McGill further testified that Mrs. Justice had also given him "a little bit of information surrounding what had occurred prior to that night before." Defendant had been drinking the previous night and she had helped get him home from a bar at approximately 2:00 a.m. At about 6:00 a.m., she was awakened when he was moving about and tripped over a coffee table. After she helped him up from his fall, they started to argue. "She stated that that argument went from being in the bars, about family, other family and various things and some name calling was exchanged between the two at which point she says that he struck her in the facial area, in the head and he kicked her two or three times." After he had hit Mrs. Justice, defendant damaged a number of items in the home:

"She advised that after this occurred that he then had kicked in and done damage to the stereo that was in the front living room, had gone into another room where the couch is located and the desk, had kicked or hit the desk and knocked some things off of there had gone on to the kitchen area and knocked over the coffee pot. He came back into the living area where she was at and she said he grabbed me again and she asked him to let her go, not do anything else and at that particular point in time he let her go, I guess he went into the bathroom and she grabbed the two kids who were already up, they were upstairs in the residence at the time, and then she left and went to the police station."

Deputy McGill testified that while he interviewed Mrs. Justice, a bruise on the left side of her face was "still continuing to swell." He also testified that she had a bump on her head. According to Deputy McGill, Mrs. Justice was still agitated at the conclusion of her oral statement to him:

"She was still, at the end of the oral statement she was still nervous, you could tell the nervousness, she appeared to be still anxious, she was somewhat, appeared to be somewhat kind of angry, those right there would be high, viewed at the end of the oral conversation."

Following Mrs. Justice's oral statement, Deputy McGill asked her to prepare a written statement. She proceeded to draft a three-page written statement that began with her activities of the previous day, included a number of the insults from the argument with defendant, and ended with a recitation of defendant's physical attack on her. The part of the statement dealing with the physical attack was as follows:

"[H]e jump[ed] up & started hitting me in the face with his fist he hit me about 5–6 times open handed then grabbed the spoon & fork on the [wall] & hit me in the head, started pushing & kicking at me then ran around like a mad man kicking the stereo, went in the kitchen knocked over the coffee pot. Came back

in the living room grabbed at me & pushed me on the floor screaming at me & I begged him not to hit me anymore. He calmed down for just a min[ute] and went to the bath room. I got the kids & left."

Deputy McGill entered the date and time at the bottom of each page of Mrs. Justice's written statement. He testified that the time indicated, 8:45 a.m., was when the written statement was finished.

According to Deputy McGill, following completion of her written statement, Mrs. Justice discovered that the truck in which she had driven to the police department was missing from the parking lot. He agreed to take her to her father-in-law's home, where she expected to find defendant and the missing vehicle. On the way there, they spotted defendant driving the missing truck and he was stopped and arrested.

The state called Mrs. Justice as a witness, but she refused to testify regarding what she had told Deputy McGill on the grounds that such testimony could tend to incriminate her. Following denial of defendant's motion to dismiss at the close of the state's case, defendant's counsel called Mrs. Justice as a witness. She then waived her right against self-incrimination and testified that she had only made her statements to Deputy McGill because he had told her she needed to "so that he could take me out to get my truck." She stated that everything she said in her statement was true, "but there was more to it." She specifically stated that her husband had hit her once with his fist and five or six times with his open hand. She said, however, that he was acting in self-defense because she had first hit his leg with a baseball bat. She said that after defendant hit her, he grabbed the wooden spoon wall ornament, they struggled over it, and "it hit" her during the struggle.

Defendant testified on his own behalf. According to him, he struck his wife only once, after she had first hit him with the baseball bat and appeared to be about to do so again. After he struck her in the face with his fist, she put the bat down. Then, according to defendant, it appeared to him that she was reaching for the wooden spoon wall ornament and a struggle ensued over it during which she was struck on the head. After Mrs. Justice left the home, he drove into Rittman and spotted her truck in the police department parking lot. He drank a cup of coffee at a restaurant across the street from the police department and then took the truck his wife had been driving and drove it to his father's house. He was driving back into Rittman from his father's house when he was arrested.

## II

### A

Defendant's first argument is that the trial court incorrectly permitted Deputy McGill to testify regarding Mrs. Justice's oral statement to him. Defendant

objected to that testimony and argued that it was inadmissible hearsay. The trial court conducted a voir dire of Deputy McGill outside the jury's presence and concluded that Mrs. Justice's oral statement to him was admissible as an excited utterance pursuant to Evid.R. 803(2).

Deputy McGill's recitation of Mrs. Justice's oral statement to him was hearsay within the meaning of Evid.R. 801. To qualify as an excited utterance and be admissible pursuant to Evid.R. 803(2), a hearsay statement must satisfy four requirements:

"Such testimony as to a statement or declaration *may be* admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge reasonably finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination *continued* to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." (Emphasis *sic.*) *Potter v. Baker* (1955), 162 Ohio St. 488, 55 O.O. 389, 124 N.E.2d 140, at paragraph two the syllabus, quoted in *State v. Taylor* (1993), 66 Ohio St.3d 295, 300–301, 612 N.E.2d 316, 320–321.

Hearsay statements that fall within the excited utterance exception are deemed worthy of admission for two reasons:

" 'Reactive excited statements are considered more trustworthy than hearsay generally on the dual grounds that, first, the stimulus renders the declarant incapable of fabrication and, second, the impression on the declarant's memory at the time of the statement is still fresh and intense. Accordingly, Rule 803(2) assumes that excited utterances are not flawed by lapses of memory or risks of insincerity.' " *State v. Taylor* (1993), 66 Ohio St.3d 295, 300, 612 N.E.2d 316, 320, quoting 1 Weissenberger's Ohio Evidence (1992), Section 803.16.

Defendant has not suggested that the occurrence described by Mrs. Justice in her oral statement to Deputy McGill was not of a type that would have been startling enough to produce sufficient nervous excitement to "still [her] reflective faculties." Further, her statement related to the startling occurrence and, as the victim, she obviously had "an opportunity to observe personally the matters

asserted in [her] statement." Defendant has argued, however, that her oral statement was not made "before there had been time for such nervous excitement to lose a domination over [her] reflective faculties."

In determining whether a statement was made under the stress of a startling occurrence, there is no definite time limit; instead, the statement should be analyzed in light of the particular facts and circumstances in which it was made. *State v. Kratzer* (Oct. 27, 1993), Medina App. No. 2119, unreported, at 9, 1993 WL 460834, citing *State v. Duncan* (1978), 53 Ohio St.2d 215, 219–220, 7 O.O.3d 380, 383, 373 N.E.2d 1234, 1236–1237. Defendant has asserted that there are three things regarding Mrs. Justice's oral statement to Deputy McGill that indicate that it was not made under the stress of a startling occurrence: (1) her statement came after she had made a conscious decision to drive to the police department; (2) she waited at the police department for some period of time before Deputy McGill arrived and spoke with her; and (3) Deputy McGill asked her questions during the statement.

According to Mrs. Justice's oral statement, she had been slapped five or six times and kicked or kicked at two or three times. The fact that she retained the ability to make a conscious decision to drive to the police department does not show that she was no longer under the stress of that startling attack. She testified that it was approximately three miles from her house to the police department and that she had started talking with Deputy McGill about ten minutes after she had last seen defendant. Deputy McGill had been dispatched to her home in response to the telephone report of a disturbance at 7:45 a.m. and began speaking with her approximately one-half hour later at a few minutes after 8:15 a.m. He testified that she appeared nervous, and seemed anxious or excited. Defendant acknowledged that he was still upset after he had driven to the police department, drunk a cup of coffee in the restaurant across the street, taken the truck in which Mrs. Justice had been driving, and driven to his father's house. Certainly, it would be reasonable to believe that Mrs. Justice would be at least as upset by the altercation with defendant as defendant was. An appellate court should sustain a trial court's ruling on the admissibility of a spontaneous exclamation as an exception to the hearsay rule when the trial court's findings of fact, as reflected in its ruling on the admissibility of the declaration at issue, were reasonable. *State v. Taylor* (1993), 66 Ohio St.3d 295, 304–305, 612 N.E.2d 316, 323–324, quoting *Potter, supra,* 162 Ohio St. at 499–500, 55 O.O. at 394–395, 124 N.E.2d at 146–147. The trial court's conclusion that Mrs. Justice was still under the stress of a startling occurrence at the time of her oral statement to Deputy McGill was reasonable.

■ Further, the fact that Deputy McGill asked Mrs. Justice questions during her oral statement does not appear to have destroyed the spontaneity of that statement. Deputy McGill testified that he asked Mrs. Justice what had happened and she began explaining the incident. He interrupted her only occasionally to have her elaborate on certain aspects of her statement:

"I asked her * * * when she was struck was it with a closed fist, closed hand, open hand * * * I asked her approximately what time did this occur, who was present at the time * * *, what specifically did happen other than just being hit or kicked * * * various questions of this nature."

These were not questions that would have, by their nature, forced Mrs. Justice to stop and become reflective before responding to them. The Ohio Supreme Court has ruled that:

"[T]he admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." *State v. Wallace* (1988), 37 Ohio St.3d 87, 524 N.E.2d 466, paragraph two of the syllabus.

Deputy McGill's questions served to clarify some aspects of Mrs. Justice's statement. They were not of a nature that would have coerced her or destroyed the domination of nervous excitement over her faculties.

The trial court acted reasonably in allowing Deputy McGill to relate the oral statement given him by Mrs. Justice. Accordingly, defendant's first argument is overruled.

### B

Defendant's second argument is that the trial court incorrectly received a copy of Mrs. Justice's written statement as an exhibit over his objection that it was precluded by the hearsay rule. As with Mrs. Justice's oral statement to Deputy McGill, the trial court found that her written statement was admissible as an excited utterance pursuant to Evid.R. 803(2). Based upon a number of factors, however, her written statement did not qualify as an excited utterance.

■ Much of Mrs. Justice's written statement dealt with background to the startling occurrence rather than with the event itself. She described what had occurred the day before and recounted insults she and defendant exchanged prior to his attack on her. She had similarly described the background of defendant's attack during her oral statement to Deputy McGill, although apparently not in as much detail. The inclusion of background information in and of itself did not preclude a finding that the statement was an excited utterance because that

background was "related to the circumstances of such startling occurrence." See 4 Weinstein's Evidence (1993), Paragraph 803(2)[01], at 803–95 to 803–96. Such inclusion, however, is more typical of a narrative or reflective statement than of a spontaneous statement.

In addition, Mrs. Justice's written statement was prepared after she had given her oral statement. A statement naturally becomes more reflective with repetition.

Further, although Deputy McGill testified that Mrs. Justice still appeared anxious at the conclusion of her oral statement, he was not asked any questions regarding her appearance as she completed her written statement. Additional time had passed and she was engaged in the naturally more reflective activity of writing rather than speaking. The most relevant parts of her written statement came near the end of it.

Based upon these factors, it appears that the trial court erred in receiving Mrs. Justice's written statement as an exhibit during the State's case. That error, however, was harmless beyond a reasonable doubt. *State v. Bayless* (1976), 48 Ohio St.2d 73, 2 O.O.3d 249, 357 N.E.2d 1035, vacated in part on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155.

The erroneous receipt of Mrs. Justice's written statement was potentially harmful to defendant in two ways. First, it could have caused the trial court's denial of his motion to dismiss at the close of the state's case and, second, it could have caused the jury's guilty verdict against him. It clearly, however, did neither.

■ The erroneous receipt of Mrs. Justice's written statement did not cause the denial of defendant's motion to dismiss at the close of the state's case because, as discussed more fully below, her oral statement, coupled with the other evidence presented by the state, was sufficient to require denial of that motion. The state had submitted sufficient evidence which, if believed, would have permitted the jury to find defendant guilty of domestic violence in the absence of the written statement.

The erroneous receipt of Mrs. Justice's written statement also did not cause his conviction of domestic violence. As noted previously, Mrs. Justice was called as a witness by defendant. As part of her testimony, she stated that the things included in her written statement "did happen but there was more to it." Further, on cross-examination regarding her written statement, Mrs. Justice reiterated that the things included in it were true:

"Q. And that's not true today?

"A.   No, those things are true those things did happen but there was more to it."

The "more to it" was that she had hit defendant's leg with a baseball bat.   She specifically stated during cross-examination, however, in contrast to defendant's testimony that he had hit her only once, that he hit her once with his fist and five or six times with his open hand.   In view of Mrs. Justice's testimony during defendant's case and her properly admitted oral statement to Deputy McGill, her written statement was merely cumulative and its erroneous admission nonprejudicial.   Defendant's second argument is overruled.

C

Defendant's third argument is that the trial court incorrectly denied his motion for acquittal at the close of the prosecution's case.   Crim.R. 29 requires a trial court to grant a motion for acquittal where "the evidence is insufficient to sustain a conviction."   In essence, defendant has argued that, in the absence of Mrs. Justice's oral and written statements, the state had failed to present sufficient evidence as a part of its case to sustain a conviction against defendant.   Inasmuch as this court has concluded that Deputy McGill's recitation of Mrs. Justice's oral statement was properly received, however, the issue becomes whether the evidence presented by the state, including Mrs. Justice's oral statement but excluding her written statement, was sufficient to sustain a conviction.

■ To determine whether the state has presented sufficient evidence to sustain a conviction, an appellate court must view the evidence in a light most favorable to the prosecution:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.   The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."   *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

As part of the state's case, Deputy McGill explained how he met Mrs. Justice at the Rittman Police Department, where she described her husband's attack on her.   She had a bruise on her cheek and a bump on her head.   She did not give any indication that her husband had struck her in self-defense.   Defendant was arrested shortly thereafter and the arresting officers testified that he appeared to still be under the influence of alcohol at that time.   The officers also testified that, after arresting defendant, they accompanied Mrs. Justice to her home,

where they discovered the house in disarray and found the wooden spoon wall ornament broken on the laundry room floor.

Viewing the evidence presented in the state's case in a light most favorable to the state, there was sufficient evidence to overcome defendant's motion for acquittal in the absence of Mrs. Justice's written statement. Defendant's third argument is overruled.

## III

Defendant's arguments are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and REECE, J., concur.