The STATE of Ohio, Appellee,

v.

CORNELL, Appellant.

[Cite as *State v. Cornell* (1998), 129 Ohio App.3d 106.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APC11–1539.

Decided July 16, 1998.

*Janet E. Jackson,* Columbus City Attorney, *Stephen L. McIntosh,* City Prosecutor, and *Brenda J. Keltner,* for appellee.

*Toki M. Clark,* for appellant.

TYACK, Judge.

On June 22, 1997, Robert E. Cornell was arrested for allegedly attacking his girlfriend, Pharis Perry. Cornell was charged with assault and domestic violence, misdemeanors of the first degree.

A jury trial was conducted in August 1997. Ultimately, the jury found Cornell guilty of both charges. He was subsequently sentenced to one hundred eighty days in jail. The conviction and sentence were journalized pursuant to an entry filed October 22, 1997.

Cornell (hereinafter "appellant") has timely appealed, assigning three errors for our consideration:

"Assignment of Error No. 1:

"The trial court committed reversible error by permitting the prosecution to introduce inadmissible hearsay declarations of an unavailable declarant, based on the excited utterance exception to the hearsay rule.

"Assignment of Error No. 2:

"The trial court deprived appellant of the right to confront witnesses as provided by the Sixth and Fourteenth Amendments to the United States Constitution and Section 20, Article I of the Ohio Constitution, by refusing to allow appellant to introduce a prior conviction of an unavailable hearsay declarant.

"Assignment of Error No. 3:

"The trial court committed reversible error by permitting the prosecution to introduce inadmissible hearsay declarations of an unavailable declarant, based on the excited utterance exception to the hearsay rule, where the declarations contain no indicia of reliability."

Since the first and third assignments of error are interrelated, we address them jointly. Both assignments of error contend that the trial court erred in allowing the prosecution to introduce allegedly inadmissible hearsay statements

made by Perry to Columbus Police Officer Travis Parker. Appellant contends that the statements did not qualify as excited utterances and were not supported by any indicia of reliability.

Pursuant to Evid.R. 801(C), "hearsay" is defined as follows:

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

Generally, hearsay is not admissible. Evid.R. 802. However, there is a plethora of exceptions, including "excited utterance," defined by Evid.R. 803(2) as:

"A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

In contrast to the hearsay exceptions set forth in Evid.R. 804 ("declarant unavailable"), the Evid.R. 803 exceptions may apply regardless of the availability of the declarant as a witness. The record before us reveals only that the declarant had been found to be unavailable, but does not explain the specific reason therefor.

Pursuant to Evid.R. 804(A), the definition of "unavailability as a witness" includes only five situations, in which the declarant:

"(1) is exempted by ruling of the court on the ground of privilege * * *;

"(2) *persists in refusing to testify* concerning the subject matter of the declarant's statement despite an order of the court to do so;

"(3) *testifies to a lack of memory* of the subject matter of the declarant's statement;

"(4) is unable to be present or to testify at the hearing because of death or then-existing physical or mental illness or infirmity; or

"(5) is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance * * * by process or other reasonable means." (Emphasis added.)

Given the above definitions and the fact that the declarant was physically present in the courthouse at the time of trial, only situations (2) and (3) could apply. Thus, there must have been a finding that Perry persistently refused to testify and/or claimed a lack of memory as to the incident.

Again, Perry, the alleged victim in this case, did not testify, at least directly. The allegedly improper hearsay testimony at issue was that given by Officer Travis Parker, one of two police officers who responded to the scene approximately ten minutes after the alleged incident. Officer Parker and his partner,

Officer Matthew Becker, were the state's only witnesses on both direct examination and rebuttal. On direct examination, Officer Parker testified as follows regarding his recollection of Perry's physical and emotional condition:

"Q. Now, you got there, did you notice anything unusual about Miss Perry?

"A. Yes, she had a bloody nose and cut up or abrasions on her knee when we approached her.

"Q. And did you both approach her, or what did you do when you first got there?

"A. We walked up, and my partner started talking to Mr. Cornell and kind of walked him to one side of the car and spoke to him. And I called Miss Perry over to me and spoke with her.

"Q. So the parties are separated. Could you describe her demeanor to the Court?

"A. Yes. She was very upset. She was crying. It was my determination that she was intoxicated. I could smell the odor of an alcoholic beverage on her person, and she was very upset.

"Q. How was her appearance in terms of her hair and clothes?

"A. She had a disheveled look. Her hair was kind of messed up, you know. And like I said, she had blood coming down from her nose, and her knee was kind of scraped up, and her elbow was also cut and bleeding on her arm.

"* * *

"Q. When you say she was intoxicated, tell me how, why you think she was intoxicated.

"A. When I spoke with her, we were very close together. * * * I could smell an odor of alcoholic beverage about her person. When she was speaking, her speech appeared to be slurred and slow."

Over defense objection, the trial court permitted the officer to testify as to what Perry told him had occurred:

"Q. Did she seem fairly exited [sic] still regarding the incident?

"[Defense counsel]: Objection.

"The Court: I will sustain the objection for leading.

"* * *

"Q. Did she appear to be angry?

"A. She was upset and distraught. * * *

"Q. And were you able to ask her about what occurred in this incident?

"A. Yes, I did.

"Q. And what did she tell you about that?

"A. She told me that her and Mr. Cornell—

"[Defense counsel]: Objection.

"The Court: Basis?

"[Defense counsel]: Hearsay. * * *

"The Court: Call a sidebar.

"* * *

"The Court: The Court will rule that this does constitute an exited [*sic*] utterance exception to the hearsay [rule].

"* * *

"Q. * * * Can you tell me what she told you about this incident?

"A. Yes. She stated that her and Mr. Cornell had had an argument inside. He became angry. He had grabbed her by the hair, had hit her repeatedly in the head and in the face, and had then drug her across the floor. She said then she broke away from him and called for the police.

"Q. Was she able to tell you this right away, or did you have to calm her down before you could have a conversation?

"A. Yes, I had to calm her down a few times, even at times when we were talking. Like I said, she was crying and upset; and, at times, she kind of broke down and cried during my questions."

On cross-examination, Officer Parker explained that on the domestic violence report form, there are numerous characteristics listed which may be displayed by a victim. The officer acknowledged that on this written report, he indicated that Perry was "crying, intoxicated and polite." He did not check the boxes for "afraid," "hysterical," or "nervous." He further testified as follows regarding the manner of his questioning of Perry:

"Q. Now, you asked her questions about what happened, correct?

"A. Yes, sir.

"Q. And she answered your questions?

"A. Yes, sir.

"Q. Now did she appear to think before she spoke? Did she appear to be reflecting and giving you an account of what happened as you questioned her?

"A. Yes. I asked her questions, and it certainly appeared to me that she was thinking when she answered.

"Q. And the information you got was in response to your questions, then, correct, from Miss Perry?

"A. From my questions and statements that she made. She was able to talk."

The state concedes that its case rested entirely upon the admissibility of the above testimony. Thus, the issue presented in these assignments of error is whether the trial court erred in admitting this testimony pursuant to the excited-utterance exception to the hearsay rule.

█ In *State v. Duncan* (1978), 53 Ohio St.2d 215, 7 O.O.3d 380, 373 N.E.2d 1234, the Supreme Court of Ohio explained the rationale underlying the exception and established a four-prong test to analyze the question. The court held, at paragraph one of the syllabus:

"Testimony as to a statement or declaration may be admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge *reasonably* finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration. (Paragraph two of the syllabus in *Potter v. Baker*, 162 Ohio St. 488 [55 O.O. 389], 124 N.E.2d 140, approved and followed.)" (Emphasis added.)

The Supreme Court of Ohio continues to apply this four-prong test. See *State v. Taylor* (1993), 66 Ohio St.3d 295, 300–301, 612 N.E.2d 316, 320–321.

█ In reviewing the trial court's application of this test, we note initially the rather narrow standard of review by which we are bound. Relying upon *Potter*, *supra*, and its progeny, the Supreme Court of Ohio has consistently adhered to a fairly discretionary "reasonableness" standard. In *Taylor*, 66 Ohio St.3d at 304–305, 612 N.E.2d at 323, the Supreme Court of Ohio rejected the more restrictive "abuse of discretion" standard; instead, the court stated:

" 'There may be instances in which a decision to reject such a declaration will appear to a reviewing court almost as reasonable as a decision to admit it; and

vice versa. We certainly do not believe that the decision of the trial judge in such an instance should be disturbed.

" ' * * * [T]he trial judge, in determining whether this declaration was admissible, necessarily had to decide certain questions of fact. If his decision of those questions of fact, as reflected in his ruling on the admissibility of this declaration, was a *reasonable* decision, an appellate court should not disturb it. In other words, we believe that *the decision of the trial judge, in determining whether or not a declaration should be admissible under the spontaneous exclamations exception to the hearsay rule, should be sustained where such decision appears to be a reasonable one,* even though the reviewing court, if sitting as a trial court, would have made a different decision.' " (Emphasis added.) Quoting *Potter, supra,* 162 Ohio St. at 499–500, 55 O.O. at 394–395, 124 N.E.2d at 146–147.

Appellant contends that Perry's out-of-court statements do not satisfy the above four-prong test and, thus, the trial court erred in unreasonably admitting the hearsay. Appellant asserts that the ten-minute lapse between the incident and the statements made to Officer Parker provided sufficient time for reflection and, further, that the statements were made not spontaneously but as the result of questioning by the officer. Furthermore, he claims, these declarations lacked any indicia of reliability; since she was intoxicated at the time of questioning, the statements were neither reliable nor trustworthy.

With respect to appellant's argument that the ten-minute lapse allowed sufficient time for reflective thought by the declarant, the case law on the issue requires a case-by-case factual determination. In *State v. Smith* (1986), 34 Ohio App.3d 180, 190, 517 N.E.2d 933, 944, the court stated:

"Evid.R. 803(2) creates a factual question as to whether the declarant is still under the stress of excitement * * * when she makes her statements. * * * The only time requirement imposed by the rule is that the statements be made without a delay which is unexplained or is inconsistent with the occurrence of the offense. *The time element is not the controlling factor.* The controlling factor is whether the declaration was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection. * * *

"* * *

"Allowing the trial court broad discretion to make factual determinations under Evid.R. 803(2), without being hamstrung by strict temporal limitations, has been accepted in other jurisdictions." (Emphasis added.)

Therefore, the time element is not dispositive; it is but one relevant factor to be considered in the admissibility analysis. See, also, *Taylor, supra,* and *State v. Justice* (1994), 92 Ohio App.3d 740, 637 N.E.2d 85.

■ In *State v. Wallace* (1988), 37 Ohio St.3d 87, 524 N.E.2d 466, the Supreme Court of Ohio spoke directly to the issue of questioning and concluded that questioning does not *necessarily* render the declarant's statements inadmissible for purposes of the excited-utterance exception. Specifically, the court held, at paragraph two of the syllabus:

■ "The admission of a declaration as an excited utterance is *not* precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." (Emphasis added.)

■ Based upon the above considerations and the record before us, we cannot say that the trial court unreasonably exercised its discretion in allowing the hearsay testimony. As indicated above, an appellate court must grant significant deference to the *factual* determinations made by the trial court. Thus, given the factual circumstances presented here, the trial court's conclusion that the victim's statements qualified as excited utterances was not unreasonable. Appellant has not demonstrated that the ten-minute time lapse between the incident and the statements made by Perry amounted to an opportunity to reflect on and/or fabricate the statements. It was reasonable to find that Perry was still under the influence of a startling event. Finally, appellant has also failed to demonstrate unreasonableness as to the trial court's implicit factual determination that Perry's statements were, irrespective of her consumption of alcohol, reliable and trustworthy. We cannot say that intoxication alone, as a matter of law, necessarily results in fabrication or lack of the requisite indicia of reliability.

The first and third assignments of error are overruled.

By his second assignment of error, appellant contends that the trial court erred by denying him his right to confrontation of a witness in refusing to allow him to introduce an alleged prior conviction of the unavailable hearsay declarant, Perry. Specifically, the trial court sustained a prosecution objection to defense counsel's attempt to question Officer Parker on cross-examination about an alleged conviction for "misuse of 911."

The trial court's apparent rationale in sustaining the objection was that the declarant's character and credibility were not at issue since she did not actually testify. Furthermore, the trial court noted that even if the state did not call Perry as a witness, the defense could do so for impeachment purposes. See, *e.g.,* Evid.R. 609 (impeachment by evidence of conviction of crime).

Defense counsel did, in fact, call Perry as its first witness on direct examination. However, upon her taking the stand, defense counsel cautioned the trial judge regarding his concerns that her testimony could perhaps subject her to

criminal liability, possibly a perjury or falsification charge. In turn, the trial judge advised Perry of her right to seek counsel and her right against self-incrimination. Ultimately, Perry stated that she would like to speak with an attorney before deciding whether to testify. At that point, the court recessed until the following day.

Defense counsel then called one Ted Davidson to testify as his first witness. The trial judge indicated to defense counsel that a public defender was present in the courtroom if counsel wanted the public defender to confer with Perry. Defense counsel responded, "I don't believe I am calling that witness." Hence, Perry was ultimately not called as a defense witness. A bench conference was then held but was not made part of the record. Although it is not on the record, one could reasonably infer that the "unavailable" Perry, after consulting counsel, would invoke her rights against self-incrimination if called as a defense witness.

Evid.R. 806 provides as follows:

"When a hearsay statement * * * has been admitted in evidence, the credibility of the declarant may be attacked * * * by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with his hearsay statement, is not subject to any requirement that he may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine him on the statement as if under cross-examination."

■ Given the unique circumstances of this case, we disagree with the trial court's conclusion that the declarant's character and credibility were not at issue, notwithstanding the fact that the declarant did not technically testify herself. Instead, her hearsay statements were admitted into evidence. Given the indisputable fact that appellant was convicted based solely upon an unavailable declarant's version of events presented via a hearsay exception, defense counsel should have been permitted to attempt to present critical evidence relative to the declarant's credibility at the time the hearsay statement was uttered. Thus, the declarant's credibility, or lack thereof, became of paramount significance.

Given the rationale underlying the trial court's determination that the declarant was unavailable, she would have been a hostile witness and/or one invoking her rights against self-incrimination. By precluding questioning of the officer regarding the declarant's alleged prior conviction, particularly one involving dishonesty, the trial court essentially deprived appellant of any meaningful opportunity to confront his true accuser, the declarant.

Based upon the foregoing, the trial court erred to the prejudice of appellant in failing to allow defense counsel to present evidence of an alleged prior conviction involving dishonesty on the part of the unavailable declarant.

The second assignment of error is sustained.

In summary, the first and third assignments of error are overruled. However, having sustained the second assignment of error, we reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

LAZARUS and JOHN C. YOUNG, JJ., concur.