OPINION
Defendant-appellant Wayne Griffitts appeals from his conviction and sentence for Felonious Assault. Griffitts claims that his alleged victim, Jill Banks, initiated the assault when she stabbed him with a letter opener, provoking him to respond. He argues that the trial court erred by: (1) admitting photographs of Banks taken from a previous Domestic Violence charge; (2) permitting testimony by officer Monica Hunt regarding Banks' oral statements over Griffitts' objection that the testimony was precluded by the hearsay rule; and (3) convicting him of Felonious Assault when the manifest weight of the evidence is against conviction. He also claims that he was denied effective assistance of counsel because his attorney failed to interview or call any defense witnesses except Griffitts.
We affirm the judgment of conviction because: (1) any error relating to the admission of the photographs was invited by Griffitts when he testified on direct examination regarding the extent of Banks' injuries on October 13, 2000, thereby opening the door to the admission of the photographs to impeach his testimony, in which he had minimized the extent of the injuries; (2) Banks' statements were properly received by the trial court as excited utterances under Evid.R. 803; and (3) the judgment is not against the manifest weight of the evidence. Furthermore, Griffitts was not denied effective assistance of counsel because the decision not to interview witnesses who had no first-hand knowledge of the attack was reasonable, and calling those witnesses may have opened the door to unfavorable testimony. Accordingly, the judgment of the trial court is Affirmed.
 I
Wayne Griffitts lived with his girlfriend, Jill Banks. Griffits and Banks frequently drank alcoholic beverages and their relationship was marked by escalating violence. On October 13, 2000, Griffitts hit Banks and was arrested for Domestic Violence. He pled to guilty to this count and was sentenced accordingly.
One week later, Banks called 911 at 3:30 A.M. She reported that Griffitts had placed a plastic bag over her head, threatened to kill her, and had gone to get a gun. The line then went dead. Police arrived and removed Griffitts from the house. He returned the next day. Around 8:30 P.M., the couple argued again, climaxing in Griffits hitting Banks repeatedly. His blows to Banks' face resulted in extensive bruising and tearing. At 1:30 A.M. the next morning, Banks went to the house of her neighbor, Carl Goraleski. Goraleski called 911. Griffiths was charged with one count of Felonious Assault. As a result of the assault, Banks suffered continuous pain and temporary disfigurement of her face. The injuries required surgery.
At trial, as part of the State's case, the trial court permitted police officer Monica Hunt to testify regarding Banks' statements that Griffitts had beat her.[1] The trial court also admitted pictures taken during the October 13, 2000 incident. Griffitts was found guilty and sentenced to eight years incarceration. He appeals from his conviction and sentence.
 II
Griffitts' first assignment of error is as follows:
 APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL UNDER THE U.S. CONSTITUTION AND OHIO CONSTITUTION WHEN THE TRIAL COURT PERMITTED IRRELEVANT AND HIGHLY PREJUDICIAL EVIDENCE TO BE ADMITTED
Griffitts argues that he was denied a fair trial because the trial court erroneously admitted: (1) pictures from an October 13, 2000 incident; and (2) statements Banks made to Hunt. We disagree.
 A. The October 13, 2000 Photographs Were Properly Admitted to Impeach Griffits' Testimony.
Griffitts maintains that he was denied a fair trial when the State introduced, and the trial court admitted, photographs relating to his October 13, 2000 Domestic Violence conviction. These pictures depict Banks bruised and covered with bite marks. Griffitts contends that these photos inflamed the emotions of the jury. He claims that these photos were introduced after Carl Goraleski's testimony. Our review of the record indicates that on direct examination Griffitts testified regarding the October 13 incident:
 I cussed at [Banks] a few times and she got very upset. I was trying to deal with this the best I knew how. There, I got angry. I slapped out at her. I didn't bruise her to the effect, I didn't break her skin. I didn't do anything like that.
T. 158 (Emphasis added).
Only afterwards, during the State's cross-examination, were these photographs introduced for the purpose of impeaching Griffitts' testimony:
 Q. [Prosecution] Okay. We're going to — no bruises. That's what you said about the 13th incident. If I recall, if I have it written down correctly, when you were first talking about it you said it was an assault domestic violence, it was all [Banks'] drinking problem; half-gallons of booze. She's got all of this booze around the house, she gets angry because you pour them out and you slap her but she didn't bruise, no bruising. Is that what you said? Do you remember that?
A. [Griffitts] Yes.
 Q. Do you know that the police took photos from that incident?
 A. Yes, I did. The only thing that they had on the photos was where she fell down upstairs cleaning the mirrors in the house which was stated on a police report, the one I'm — the one on the 11th.
* * *
 Q. I hand you what has been identified as State's Exhibit No. 22.
* * *
Q. This was from the 13th. Do you recognize that?
A. Yes. It's a bite mark.
Q. And who is in the picture?
A. It's Jill Banks.
Q. And it's a bite mark on where?
A. It's on her cheek. On her left cheek.
Q. State's Exhibit No. 23, do you recognize that?
A. Yes.
Q. Who is in that picture?
A. That's Jill Banks.
Q. What does it show?
 A. Marks. It shows that she had a bruise underneath her arm.
Q. Does she have her arm up and she's showing bruises?
A. Yes, one bruise.
Id. at 182-85.
We conclude that the trial court did not err in admitting these photos because Griffitts' counsel had questioned him regarding the October 13, 2000 incident, and as a result, introduction and admission of the photographs was proper to impeach Griffitts regarding the truthfulness of his testimony. Under the invited error doctrine, it is well established that "[a] party cannot take advantage of an error he invited or induced." State v. Seiber (1990), 56 Ohio St.3d 4, 17 (internal citations omitted). By having testified on direct examination concerning the October 13, 2000 incident, and minimizing the extent of Banks' injuries, Griffits opened the door to the impeachment of his testimony by evidence showing that Banks' injuries were more severe.
 B. Banks' Statements are Admissible as Excited Utterances
Griffitts also argues that the trial court denied him a fair trial when it allowed Hunt to testify regarding Banks' statements to her. He objected to that testimony and argued that it was inadmissible hearsay. The trial court conducted a voir dire of Hunt outside the jury's presence and concluded that several of Banks' statements to her regarding the incident were admissible as excited utterances pursuant to Evid.R. 803(2). We agree with the trial court's conclusion.
Hunt testified:
 [Banks] was very upset. She said that Wayne [Griffitts] had did this to her. She pointed to her face. She was covered, she had blood all over her, swelling all over her face and she just kept saying that Wayne did this to her. She told me that it happened about 9:00 o'clock and that he would not allow her to leave the house. When she finally could sneak out of the house, she ran to Mr. Goraleski's house.
T. 72.
Obviously, Hunt's testimony regarding Banks' statements to her was hearsay within the meaning of Evid.R. 801. However, certain hearsay statements — excited utterances in this case — are nonetheless admissible because they bear sufficient indicia of reliability:
 Reactive excited statements are considered more trustworthy than hearsay generally on the dual grounds that, first, the stimulus renders the declarant incapable of fabrication and, second, the impression on the declarant's memory at the time of the statement is still fresh and intense. Accordingly, Rule 803(2) assumes that excited utterances are not flawed by lapses of memory or risks of insincerity.
State v. Taylor (1993), 66 Ohio St.3d 295, 300, quoting 1 Weissenberger's Ohio Evidence (1992), Section 803.16.
A hearsay statement must satisfy four requirements to qualify as an excited utterance and be admissible under Evid.R. 803(2):
 Such testimony as to a statement or declaration may be admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge reasonably finds:
 (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective;
 (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs;
 (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence; and
 (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.
Id. at 300-301, quoting Potter v. Baker (1955), 162 Ohio St. 488, paragraph two of the syllabus.
A trial court is entitled to some deference in its decisions concerning hearsay exceptions. A decision to admit hearsay statements under the excited utterance exception should be sustained where the decision appears to be reasonable, even if the reviewing court might have decided differently. Id., at 305.
Griffitts has not disputed that the occurrence described by Banks to Hunt was of a type that would have been sufficiently startling to produce nervous excitement to still Banks' reflective faculties. Furthermore, Banks' statement related to the startling occurrence, and, as the victim, she obviously had an opportunity to observe personally the matters asserted in her statement.
Griffitts argues that Banks' statements were not made "before there had been time for such nervous excitement to lose a domination over [her] reflective faculties." We disagree. There is no magic time limit to determine whether a victim of domestic violence is making a statement under the stress of a startling occurrence; these statements must "be analyzed in light of the particular facts and circumstances in which [they were] made." State v. Justice (1994), 92 Ohio App.3d 740, 746
(internal citations omitted). Banks was visibly upset; she was bleeding and her face was swelling when she made the statements to Hunt. In our view, the trial court's decision to admit these statements was reasonable.
Griffitts' first assignment of error is overruled.
 III
Griffitts' second assignment of error is as follows:
 APPELLANT'S CONVICTION SHOULD BE REVERSED BECAUSE THE GUILTY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE
Griffitts argues that his conviction for Felonious Assault is against the manifest weight of the evidence. He claims that he should have been convicted of Aggravated Assault instead of Felonious Assault because Baker stabbed him with a letter opener, constituting serious provocation leading to the blows that resulted in Banks' injuries.
To determine whether a conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
The weighing of evidence and credibility of witnesses, however, are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Accordingly, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77 (internal citations omitted).
R.C. 2903.11, the Felonious Assault statute, provides in relevant part that: "(A) No person shall knowingly * * *: (1) Cause serious physical harm to another or to another's unborn * * *" Conversely, R.C. 2903.12, the Aggravated Assault statute, provides in relevant part that: "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly: (1) Cause serious physical harm to another or to another's unborn * * *." Comparing the two offenses, it is apparent that they are, except for one distinction, identical. State v. Mack (1998), 82 Ohio St.3d 198, 200. Specifically, Aggravated Assault requires the additional mitigating element of provocation. Id.
Provocation must be:
 [R]easonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time.
Id., quoting State v. Deem (1988), 40 Ohio St.3d 205, paragraph five of the syllabus. Courts engage in a two-part analysis to determine if provocation exists:
 First, an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage. That is, the provocation must be "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." If this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case "actually was under the influence of sudden passion or in a sudden fit of rage."
Id., quoting State v. Shane (1992), 63 Ohio St.3d 630, 634-35.
Based upon our review of the record, we conclude that Griffitts' conviction is not against the manifest weight of the evidence. Griffitts testified that after trying to leave Banks' home she "picked up the letter opener and I had a pair of shorts on. She stabbed me in the leg with it, says, you're not going nowhere." T. 166-67. He claimed that when she stabbed him, "I was angry. I was more hurt than anything." Id. at 174. This anger apparently caused him to back-hand Banks several times. These slaps resulted in temporary disfigurement of Banks' face, pain, and surgery. After the close of evidence, the jury was instructed on both the offense of Felonious Assault and the lesser offense of Aggravated Assault.
Even if the jury believed Griffitts' testimony about the stabbing, the jury could reasonably conclude that it was insufficient to constitute provocation for the serious physical assault upon Bank described by the State's evidence. While we agree that a stabbing is reasonably sufficient to bring on a sudden passion or fit of rage under some circumstances, Griffitts failed to show that it was reasonable under these circumstances. He testified that the stabbing "wasn't nothing — it was a letter opener, a dull letter opener. It wasn't nothing that serious. It was just serious enough to make me mad." Id. at 194. In view of Griffitts' admission that Banks having stabbed him with the dull letter opener "wasn't nothing that serious," a reasonable jury could conclude that it was insufficient to constitute reasonable provocation for the savage beating that Griffitts inflicted upon Banks.
Moreover, the State offered testimony that Griffitts failed to tell any of the arresting officers about this stabbing either when he was arrested or during his interview the following day. Thus, the jury could reasonably have disbelieved Griffitts' testimony regarding the stabbing. DeHass, supra. Since the State's evidence supports each element of Felonious Assault and Griffitts failed to show sufficient provocation to mitigate the offense to Aggravated Assault, his conviction is not against the manifest weight of the evidence.
Griffitts' second assignment of error is overruled.
 IV
Griffitts' third assignment of error is as follows:
 DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL TO HIS PREJUDICE AND IN VIOLATION OF SIXTH AND FOURTEENTH AMENDMENT RIGHTS, AS WELL AS HIS RIGHTS UNDER SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION
Griffitts claims he was denied effective assistance of counsel because his attorney did not interview, and refused to call, any potential defense witnesses.
To establish ineffective assistance of counsel, Griffitts must show deficient performance on the part of his counsel resulting in prejudice to him. State v. Bradley (1989), 42 Ohio St.3d 136, 141-43. Counsel's performance is deficient if it falls below an objective standard of reasonable representation. Id. at 142. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Id. at 143.
A licensed attorney is presumed to be competent, and, as a result of this presumption, a defendant must prove that counsel was ineffective. State v. Pattin (Aug. 7, 1992), Lucas App. No. L-91-339, unreported, citing State v. Hamblin (1988), 37 Ohio St.3d 153, 155-156,524 N.E.2d 476, 478-480. Additionally, there is also a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Bradley, 42 Ohio St.3d at 142
(internal citations omitted).
An attorney has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland v. Washington, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066,80 L.Ed.2d 674. A decision not to investigate must be "directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id.
The trial court asked defense counsel on the record if he considered Griffitts' request to call defense witnesses. To which counsel responded:
 He has provided names to me. As far as I'm aware, there were no other witnesses who were present when the injuries occurred. The witnesses he's presented have been Tom Armentrout, who is Jill Banks' brother, who might be able to speak in relation to her alcohol or drug use. But those are not mitigating factors involved in the case, or in a very peripheral fashion, and Kathy Mong is a neighbor who would not be able to, again, who would be talking at best from Mr. Griffitts' points of view as to Jill's drug or alcohol use. But again, that would be very much the same kind of testimony with her we've heard from Mr. Goraleski.
 Attorney Matthew Jewson represented one of the parties in the Banks' divorce. I don't know what he would have any first hand information about. If he were to say that Miss Banks was difficult during deposition or during the divorce, that would be an issue that I think would be found to be quite irrelevant to the proceedings here.
 And the last person was Krista Bernstein, as he suggested, was one of the officers who took Mr. Griffitts to Ann Shropshire's house on the 19th, the day before these incidents. We've already had testimony in relation to that. And again, that is not a factor that relates to either or any of the elements of the felonious assault which is charge or to a lesser included defense which is what Mr. Griffitts is trying to present to this court.
 And consequently, since none of these witnesses had any direct relevance to the issues that were central to this court, it would not be helpful to him; and, in fact, could be quite harmful to him because they could testify in other ways about Jill's character that would be contrary to what Mr. Griffitts is to believe.
T. 217-18.
Based on the foregoing conversation, we conclude that counsel made a reasonable decision that it was unnecessary to interview these witnesses. Accordingly, counsel's failure to interview potential defense witnesses does not rise to the level of ineffective assistance of counsel.
Moreover, counsel's failure to call a witness is not ineffective assistance of counsel if calling that witness opens the door to unfavorable testimony that counsel reasonably concludes would likely outweigh the value of any favorable testimony the witness might offer. State v. Sandy (1982), 6 Ohio App.3d 37, syllabus. We agree with Griffitts' counsel that calling these witnesses may have done more harm than good, because they may have testified in other ways about Jill's character and negated Griffitts' testimony in the minds of the jury. Thus, Griffitts failed to establish that counsel's performance was ineffective based on his failure to call these defense witnesses.
Griffitts' third assignment of error is overruled.
 V
All of Griffitts' assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and GRADY, JJ., concur.
[1] At the time of the trial, Banks was deceased. Her death was unrelated to the injuries inflicted during Griffits' alleged assault.