OPINION
{¶ 1} Joyce A. McNabb appeals from her conviction and sentence in the Montgomery County Common Pleas Court on one count of theft by intimidation and one count of attempted theft by intimidation.
 {¶ 2} McNabb advances two assignments of error on appeal. First, she contends the trial court erred in admitting certain statements allegedly made by the victim as excited utterances under Evid.R. 803(2). Second, she argues the trial court erred in finding that other statements allegedly made by the victim did not qualify as excited utterances.
 {¶ 3} The record reflects that McNabb worked as a care giver for 79-year-old Wilmore Haney, who was in poor health and lived alone. After Haney's release from the hospital in April, 2001, McNabb agreed to provide him with 24-hour care in order to avert his transfer to a nursing home. On April 13, 2001, McNabb took Haney to a notary public, and he signed a general power of attorney, granting her the authority to conduct his banking transactions. McNabb then took Haney to Fifth-Third Bank and attempted to close his $30,000 savings account. A representative of the bank refused to give McNabb or Haney the $30,000 in cash and instead placed the money in a checking account and issued eight starter checks. Thereafter, on April 16, 2001, McNabb took Haney to Key Bank, where he redeemed an unmatured certificate of deposit for $29,691.21 in cash.
 {¶ 4} As a result of his failing health, Haney was taken to the hospital in an ambulance two days later. During the trip, he became anxious about leaving home without his wallet and said, "[Y]ou don't understand, it's that woman, she takes all my money." (Tr. at 144). The paramedics returned to the house and retrieved Haney's wallet. After obtaining the wallet, Haney began searching for his bank card and said, "[S]he steals from me." (Id.). While on the way to the hospital, Haney again stated that McNabb was taking his money. He also said that she made him sign "the papers," and that she threatened to put him in a nursing home if he did not sign them. (Id. at 159).
 {¶ 5} A detective later contacted McNabb, and she admitted having the $29,691.21 that Haney had received from Key Bank. She refused to return the money, however, insisting that it was her compensation for caring for Haney for three years. McNabb subsequently was arrested and charged with theft and attempted theft based on the Fifth-Third Bank and Key Bank transactions. While executing a search warrant, police recovered two signed but unused starter checks. The other six checks appear to have been used to provide for Haney's care. The cash was never recovered.
 {¶ 6} The matter proceeded to trial in October and November of 2001, without the presence of Haney, who was then deceased. One of McNabb's witnesses was Betty Hood, her cousin. Hood testified that she visited Haney in a nursing home in May, 2001. Hood then attempted to testify that Haney never mentioned McNabb taking his money, that he never mentioned any threat, that he wanted to know when McNabb was taking him home, and that he became upset when he discovered that she was in jail. (Tr. at 273-274). The trial court sustained an objection to this testimony. The jury subsequently found McNabb guilty of both theft and attempted theft by intimidation of an elderly person. The court imposed concurrent sentences of two years on the theft conviction and 15 months on the attempted theft conviction. McNabb then filed a timely appeal, advancing the two assignments of error set forth above.
 {¶ 7} In her first assignment of error, McNabb insists that Haney's statements in the ambulance failed to qualify as excited utterances under Evid.R. 803(2). In particular, she challenges the admissibility of Haney's initial statements that "she takes all my money" and that "she steals from me." (Tr. at 144). McNabb also challenges the admissibility of Haney's subsequent statements that she was taking his money, that she made him sign "the papers," and that she was going to put him in a nursing home if he did not sign them. (Id. at 159).
 {¶ 8} Upon review, we find McNabb's first assignment of error to be unpersuasive. In State v. Duncan (1978), 53 Ohio St.2d 215, the Ohio Supreme Court set forth a four-part test to determine whether a statement qualifies as an excited utterance. In particular, the court held that "testimony as to a statement or declaration may be admissible under an exception to the hearsay rule for spontaneous exclamations where the trial judge reasonably finds (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective, (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." Id. at paragraph one of the syllabus.
 {¶ 9} In State v. Taylor (1993), 66 Ohio St.3d 295, the Ohio Supreme Court addressed the standard of review that an appellate court should apply when analyzing a trial court's application of the foregoing four-part test. In Taylor, the court first noted that "`[t]here may be instances in which a decision to reject such a declaration will appear to a reviewing court almost as reasonable as a decision to admit it; and vice versa.'" Id. at 304, quoting Potter v. Baker (1955), 162 Ohio St. 488. In such a case, a trial court's ruling should not be disturbed. Id. As the Taylor court explained, "`the trial judge, in determining whether [a] declaration was admissible, necessarily ha[s] to decide certain questions of fact. If his decision of those questions of fact, as reflected in his ruling on the admissibility of th[e] declaration, was a reasonable decision, an appellate court should not disturb it. In other words, . . . the decision of the trial judge, in determining whether or not a declaration should be admissible under the spontaneous exclamations exception to the hearsay rule, should be sustained where such decision appears to be a reasonable one, even though the reviewing court, if sitting as a trial court, would have made a different decision.'" Id. at 304-305.
 {¶ 10} With the foregoing standards in mind, we cannot say that the trial court acted unreasonably when it found Haney's statements in the ambulance qualified as excited utterances. To the contrary, the trial court reasonably could have found, under the circumstances, that Haney's act of leaving his wallet in the house was a startling occurrence that produced nervous excitement sufficient to render his statements spontaneous and unreflective. The trial court also reasonably could have found that Haney's statements were made before there was time for his nervous excitement to lose its domination over his reflective faculties, so that the statements remained a sincere expression of his actual impressions and beliefs. Certainly, Haney's initial statements that McNabb "takes all my money" and "steals from me" were made while he remained under the influence of nervous excitement. Haney made the first remark upon discovering that he had left his wallet behind. He made the second comment after being given the wallet but while still searching for his bank card. With respect to Haney's subsequent statements that McNabb made him sign "the papers" and threatened to put him in a nursing home if he refused, we believe that these remarks present a closer question. Nevertheless, the trial court reasonably could have found that Haney made these statements before there was time for his nervous excitement to subside. See, e.g., Taylor, supra, at 303 ("There is no per se amount of time after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought."). Indeed, the testimony of the paramedic established that Haney remained under "excitement or stress" throughout the ride to the hospital. (Tr. at 154). The paramedic also testified that Haney remained anxious when he made the statements about being made to sign "the papers" and the threat of being placed in a nursing home. (Id. at 159). Likewise, the trial court reasonably could have found that the statements related to the startling occurrence or the circumstances of the startling occurrence. The statements that McNabb took Haney's money and stole from him certainly related to his excitement about leaving his wallet in his house. Similarly, the statements that McNabb made him sign "the papers" and threatened to put him in a nursing home if he refused reasonably could be construed as assertions of theft or attempted theft by threat or intimidation, which, once again, would relate to and help explain his excitement about leaving his wallet behind. Finally, the trial court reasonably could have found that Haney had first-hand knowledge of the matters asserted in his statements. As a result, the trial court reasonably determined that the various statements at issue were admissible as excited utterances under Evid.R. 803(2), and we overrule McNabb's first assignment of error.
 {¶ 11} In her second assignment of error, McNabb argues that the trial court erred in excluding the testimony of her cousin, Betty Hood. As noted above, Hood attempted to testify that she visited Haney several weeks after the events at Fifth-Third Bank and Key Bank, and that Haney never mentioned McNabb taking his money, never mentioned any threat, wanted to know when McNabb was taking him home, and became upset when he discovered that she was in jail. On appeal, McNabb insists, with little analysis, that Hood's proffered testimony "had the essential elements of the excited utterance exception[.]"
 {¶ 12} Upon review, we find McNabb's argument to be without merit. As an initial matter, Haney's failure to say anything to Hood about McNabb taking his money or threatening him cannot possibly qualify as an excited utterance. Indeed, we fail to discern how silence can constitute an utterance at all. Likewise, the fact that Haney became "upset" when he heard McNabb was incarcerated is not an utterance, "excited" or otherwise. The only utterance at issue is Haney's inquiry about when McNabb was going to take him home. This remark fails to qualify as an excited utterance for at least two reasons. First, given that it is a question rather than an "assertion," it appears to fail the final part of the four-part test set forth above. Second, the Ohio Supreme Court has recognized that questions are not hearsay. See, e.g.,State v. Carter, 72 Ohio St.3d 545, 549, 1995-Ohio-104 ("[B]ecause a true question or inquiry is by its nature incapable of being proved either true or false and cannot be offered `to prove the truth of the matter asserted,' it does not constitute `hearsay' as defined by Evid.R. 801."). As a result, a question logically cannot fall under the excited utterance exception to the hearsay rule.[1] Accordingly, we overrule McNabb's second assignment of error and affirm the judgment of the Montgomery County Court of Common Pleas.
Judgment affirmed.
GRADY, J., and YOUNG, J., concur.
[1] Although Haney's statement to Hood may have been admissible as non-hearsay, McNabb's only argument on appeal is that the statement was admissible as an excited utterance. We find this argument to be unpersuasive.