OPINION
{¶ 1} Defendant-appellant, Gus Bealer, appeals his conviction in the Butler County Court of Common Pleas for murder. We affirm the decision of the trial court in part, and reverse and remand the decision in part.
 {¶ 2} Appellant and Cheryl Hahn lived together for eight years. According to Hahn's daughter, the couple had an unstable relationship. In June 2001, appellant had been living apart from Hahn for several weeks. In the early morning of June 22, 2001, Hahn gave a fellow employee a ride home from work.
 {¶ 3} At some point that day, appellant went to Hahn's house and the two had an argument. During the altercation, appellant hit Hahn with a baseball bat. Appellant left the house and called a friend to come pick him up. Appellant's friend, Charles Gamble, testified that, after he picked appellant up, appellant ducked down in the seat of the car and was acting nervous. Appellant told Gamble that he and Hahn had a fight and that he had "accidentally" hit her in the head with a baseball bat. Appellant told Gamble that Hahn hit him with a baseball bat and he "got caught up in the moment," wrestled the bat away and accidentally hit her in the head. He told Gamble that he did not know if Hahn was dead or alive.
 {¶ 4} Appellant went to the home of his daughter, Sonya Hilliard. Hilliard spoke with her aunt, Lori Smith, who eventually called police to report a possible murder. Hamilton police detectives went to Hahn's house and knocked loudly on the door. When no one answered, the detectives looked into the windows of the home. In a bedroom window, they observed an arm lying in a brown stain on the bed.
 {¶ 5} When the detectives entered the house, they smelled decomposing flesh. They found Hahn's body lying on the bed in the bedroom. She was on the bed with her feet toward the headboard, and pillows were arranged around her head and a quilt was placed on top of her body. The detectives saw that Hahn had massive head wounds, including a large open wound on her forehead above her left eye, blackened eyes, and three large open wounds on the back and side of her head.
 {¶ 6} With assistance from Lori Smith, police arrested appellant for Hahn's murder. Appellant initially told police that he and Hahn were arguing and she hit him with a bat on his back. He stated that he then took the bat from her and hit her once above the eye. Appellant stated that the two were in the kitchen when the altercation occurred. After more questioning, Bealer then changed the location of the altercation to the living room.
 {¶ 7} After police told appellant that he was being charged with Hahn's murder, appellant asked police if he could "tell the truth." Appellant claimed that Hahn hit him in the chest with the bat and that he took the bat from her and started to walk away. He claimed that Hahn "got on his case" and, when they were in the bedroom, slapped him, then sat on the bed "jawing at him." Appellant stated that he swung the bat at her, hitting her on the head when she ducked.
 {¶ 8} Appellant was arrested for Hahn's murder. A jury convicted appellant of murder. The trial court sentenced appellant to 15 years to life in prison and ordered him to pay counsel costs.
 {¶ 9} Appellant now appeals his conviction and part of his sentence. He raises four assignments of error.
Assignment of Error No. 1
 {¶ 10} "The trial court erred to the prejudice of defendant-appellant when it allowed certain hearsay testimony to be introduced into evidence."
Assignment of Error No. 2
 {¶ 11} "The trial court erred to the prejudice of defendant-appellant when it refused to instruct the jury on a lesser included offense."
Assignment of Error No. 3
 {¶ 12} "The trial court erred to the prejudice of defendant-appellant when it refused to allow evidence regarding the state's discovery violations."
Assignment of Error No. 4
 {¶ 13} "The trial court erred to the prejudice of defendant-appellant when it ordered him to pay counsel costs."
 {¶ 14} In his first assignment of error, appellant argues that the trial court erred by allowing inadmissible hearsay to be introduced as evidence. The trial court allowed Smith to testify that Hilliard told her that appellant confessed to killing Hahn.[1] According to Smith, appellant told Hilliard that he used a baseball bat to kill Hahn, swinging so hard that Hahn flew across the room as blood came from her mouth and the back of her head. Smith testified that appellant told Hilliard that the bat he used broke in two because he hit Hahn so hard and that he threw it in the river. Smith also testified that Hilliard said she felt sorry for Hahn's children and that her grandchildren would never get to know her.
 {¶ 15} Appellant objected to this testimony as hearsay, but the prosecutor argued that it fell under the excited utterance exception to the hearsay rules. The trial court overruled the objection.
 {¶ 16} Evid.R. 803(2) defines an "excited utterance" as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The rationale for admitting such statements is that the declarant is unable, due to the startling event, to reflect on the statement sufficiently to fabricate it. See State v. Wallace (1988),37 Ohio St.3d 87, 88.
 {¶ 17} To qualify as an excited utterance exception to the hearsay rule, a statement must meet a four-part test:
 {¶ 18} "(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective,
 {¶ 19} "(b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,
 {¶ 20} "(c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and
 {¶ 21} "(d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration." Id. at 89, citing Potter v. Baker (1955), 162 Ohio St. 488, paragraph two of the syllabus; In re Michael (1997), 119 Ohio App.3d 112.
 {¶ 22} Smith testified that she saw Hilliard on a Sunday and Hilliard appeared "jittery" and said she had something to tell her. Smith called Hilliard later and heard appellant in the background. Hilliard said she could not talk then. Smith testified that she and Hilliard spoke on Monday and Hilliard acted nervous and scared. According to Smith, they spoke about Hahn's death and about appellant. This conversation prompted Smith to call police about a possible murder.
 {¶ 23} Later on Monday, Smith helped police apprehend appellant by agreeing to pick him up in her car from Hilliard's house. When Smith arrived, Hilliard came running from the house, screaming and upset, then fell to the ground in front of the house. Smith left at appellant's request. Police surrounded the car and appellant was arrested. Smith later located Hilliard at her sister's home. Hilliard told Smith that she was relieved the ordeal was over and then told Smith that appellant had told her about the murder.
 {¶ 24} Appellant argues that there was no startling event that occurred to make the excited utterance exception applicable. The state argues that the confession itself was the startling event, and that Hilliard was still under the stress of the event when she gave Smith details of appellant's confession. We agree that appellant's confession and description of the murder to his daughter could be a starting event, and that Hilliard was under extreme stress and anxiety because of the confession and the surrounding events. However, the facts of this case show that that Hilliard's statements to Smith came after the initial stress of the startling event was over.
 {¶ 25} An excited utterance must be the product of reactive rather than reflective thinking. State v. Taylor (1993), 66 Ohio St.3d 295,300. "Reactive excited statements are considered more trustworthy than hearsay generally on the dual grounds that, first, the stimulus renders the declarant incapable of fabrication and, second, the impression on the declarant's memory at the time of the statement is still fresh and intense. Accordingly, Rule 803(2) assumes that excited utterances are not flawed by lapses of memory or risks of insincerity." 1 Weissenberger's Ohio Evidence (1992), Section 803.16.
 {¶ 26} When considering the timing issue, the Ohio Supreme Court found that "[t]here is no per se amount of time after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought. Therefore the passage of time between the statement and the event is relevant but not dispositive of the question." The court further found that each case must be decided on its own circumstances, "since it is patently futile to attempt to formulate an inelastic rule delimiting the time limits within which an oral utterance must be made in order that it be termed a spontaneous exclamation." Id., quoting State v. Duncan (1978), 53 Ohio St.2d 215, 219-220.
 {¶ 27} Smith's testimony is unclear regarding precisely when appellant told Hilliard the details regarding Hahn's murder. It is apparent, however, that Hilliard had some information regarding the murder early on Monday when she spoke with Smith, because Smith stated that they discussed "the murder." It is also apparent from Smith's testimony that the conversation in which Hilliard told her the details about what appellant said occurred after time for reflective thought had occurred. Smith said that Hilliard stated she was relieved that the ordeal was over, which evidences a release from the initial stress caused by her father's confession. Accordingly, we find that Hilliard's statements do not qualify as an excited utterance exception to the hearsay rule.
 {¶ 28} However, we find that admission of these statements was harmless error. See State v. Davis (1975), 44 Ohio App.2d 335, 344. Appellant told Gamble that he and Hahn got into a fight and he hit her with a baseball bat. Appellant admitted to police that he hit Hahn with a baseball bat. The coroner testified that the injuries were consistent with injuries from a baseball bat. There was overwhelming evidence of appellant's guilt without Smith's testimony regarding Hilliard's statements. Appellant's first assignment of error is overruled.
 {¶ 29} In his second assignment of error, appellant contends that the trial court erred by refusing to instruct the jury on a lesser included charge. Appellant requested that the trial court instruct the jury on involuntary manslaughter. The trial court found that the instruction was not warranted under the evidence presented in the case.
 {¶ 30} The mere fact that an offense is a lesser included offense of another does not necessitate a jury charge on the lesser included offense. State v. Thomas (1988), 40 Ohio St.3d 213. Even though an offense may be statutorily defined as a lesser included offense of another, "a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Raglin, 83 Ohio St.3d 253, 257, 1998-Ohio-110, quotingState v. Thomas (1988), 40 Ohio St.3d 213, at paragraph two of the syllabus. However, an instruction is not warranted every time "some evidence" is presented on a lesser included or inferior degree offense.State v. Shane (1992), 63 Ohio St.3d 630, 632-33.
 {¶ 31} In Count One, appellant was charged with murder in violation of R.C. 2903.02(A), which states: "No person shall purposely cause the death of another * * *." In Count 2, he was charged with murder in violation of R.C. 2903.02(B), which states: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *."
 {¶ 32} Appellant requested an instruction on involuntary manslaughter on the basis that he was provoked into the assault. Pursuant to R.C. 2903.04(A), a person commits involuntary manslaughter when he causes the death of another as approximate result of committing or attempting to commit a felony. Appellant argues that the jury could have found that hitting Hahn constituted felonious assault pursuant to R.C.2903.12(A)(1). This provision states that "[n]o person, while under influence of sudden passion or in a sudden fit of rage brought on by serious provocation by the victim shall cause physical harm to another."
 {¶ 33} However, any provocation by the victim must be sufficient to arouse the passions of an ordinary person beyond his or her control.Shane, 63 Ohio St.3d at 634-35. The provocation must be reasonably sufficient to incite the defendant to use deadly force. Id. at 635. Mere words do not constitute sufficient provocation in most situations. Id. at 637. Appellant's statements regarding the attack varied, but in his last statement to police, he said that Hahn hit him, shoved him and slapped him, but that it was when she was sitting on the bed "jawing" at him when he hit her. This was not serious provocation which would reasonably incite a person to use deadly force.
 {¶ 34} In addition, the degree of the harm done to the victim is inconsistent with appellant committing an assault or aggravated assault, and is inconsistent with actions that are not purposeful. The coroner testified that Hahn had severe skull fractures reaching from the top to the bottom of her head. Her brain was severely injured as a result of at least three to four separate impacts. The coroner stated that in order to receive these injuries, considerable force had to have been applied to Hahn's head to cause her severe injuries. Therefore, we find that the trial court did not err in denying appellant's request for an instruction on involuntary manslaughter. Appellant's second assignment of error is overruled.
 {¶ 35} In his third assignment of error, appellant contends that the trial court erred by refusing to allow him to present evidence to the jury of the state's discovery violations. At a hearing on February 12, 2001, appellant's attorney brought to the court's attention that he had not received a copy of a report regarding submission of the defendant's bat, bat bag and clothing for DNA comparison of blood, hair or tissue. The report indicated that none of the victim's blood, hair or tissue was found on the bat appellant stated that he used in the assault. A hearing on the issue was held on February 15, and appellant's counsel stated that since the previous hearing, he had received the report. The state did not present the report as evidence. Appellant, however, submitted the report into evidence at trial.
 {¶ 36} At trial, appellant's counsel attempted to argue in opening statements that the state had not timely complied with discovery requests. The trial court sustained the state's objection on this line of argument. Appellant also attempted to elicit testimony from police detectives regarding why the report had not been turned over to him, and attempted to call one of appellant's previous attorneys on the case to establish that she had not received the report in discovery. Appellant also attempted to call the assistant prosecutor to testify regarding the discovery issue. The trial court sustained objections to admission of this evidence.
 {¶ 37} Appellant also filed a request that the trial court review the state's case file to determine whether any other favorable material had been omitted from discovery. The trial court denied the request. Appellant now argues that this court should grant him a new trial in which he is permitted to argue to the jury that the state's failure to comply with discovery indicated that it had something to hide.
 {¶ 38} We find no error in the trial court's decision denying this line of questioning at trial. The record supports the state's contention that the failure to supply the report was merely an oversight. The issue arose during a motion to suppress when a police officer discussed submission of the items for analysis. Appellant's counsel was supplied with the report within days after the parties realized that the report had not been exchanged in discovery. Appellant had three different attorneys represent him in this matter, and trial was rescheduled when appellant changed counsel. On appeal, appellant argues that the report was not received until after his trial was originally scheduled to begin. However, that trial date had been vacated and reset. Appellant's trial counsel, his third attorney, received the report several weeks before trial.
 {¶ 39} Appellant admits in his brief that he can find no legal support for his argument that this information was proper evidence for the jury to consider. Instead, he asks this court to expand criminal law to allow such evidence in a manner similar to that allowed in the civil context for spoliation of evidence. See Smith v. Howard Johnson Co.,Inc., 67 Ohio St.3d 28, 1993-Ohio-229.
 {¶ 40} We find that the trial court properly excluded this evidence from trial. In a criminal trial, the issue is the defendant's guilt or innocence of the crime charged. The trial court found that evidence of the state's compliance with discovery was irrelevant to the issue of appellant's guilt or innocence. We agree. Appellant's third assignment of error is overruled.
 {¶ 41} In its sentencing entry, the trial court ordered appellant "to pay all costs of prosecution, counsel costs and any fees permitted pursuant to Revised Code Section 2929.18(A)(4)." Appellant argues that the court did not make an affirmative determination on the record that appellant has or reasonably may be expected to have the ability to pay some or part of his counsel costs.
 {¶ 42} The state concedes that this case should be remanded to the trial court to consider appellant's ability to pay counsel costs. Accordingly, on remand, the trial court is instructed to consider appellant's present and future ability to pay counsel costs. Appellant's fourth assignment of error is sustained.
 {¶ 43} Judgment affirmed in part, reversed in part and remanded for consideration of appellant's ability to pay counsel costs.
VALEN, P.J., and POWELL, J., concur.
[1] Although subpoenaed, Hilliard did not appear to testify at trial.