DECISION.
{¶ 8} Appellant Neil Lampe appeals his conviction for domestic violence in violation of R.C. 2919.25. He raises the following three assignments of error: (1) his conviction was against the manifest weight of the evidence; (2) the trial court erred by admitting hearsay evidence; and (3) the Hamilton County Sheriff's Department's mandatory-arrest policy in domestic-violence cases is unconstitutional.
{¶ 9} At the time of this incident, Lampe and his spouse, Alicia Lampe, were separated and were battling for custody of their five children. Alicia brought the children to Neil's house for court-ordered visitation after leaving him an angry telephone message about his incompetence.
{¶ 10} According to Alicia, Neil met her in his driveway, angry that the children had not been at her house when he had arrived to pick them up. Alicia and Neil exchanged insults, while Alicia sat in her van. Neil lunged through the van's window and grabbed and pulled Alicia's hair, causing her shoulder to hit the frame of the van's window. He then pushed her back, causing Alicia to tear or bend her fingernail. Neil entered the house; Alicia stepped into the yard and called for emergency assistance. Neil returned, grabbed the keys from the van's ignition, and took them into the house. He returned again and threw the keys onto the front seat of the van. Alicia continued talking with the emergency operator until Timothy Taylor, a patrol officer for the Hamilton County Sheriff's Department, arrived. Alicia testified that her shoulder had later displayed a bruise, that she had suffered pain in her head over several days, and that she had lost some hair.
{¶ 11} According to Neil, he had not listened to Alicia's angry telephone message before she arrived with the children. When he approached the car, Alicia asked where he had been and started calling him names. Neil asked her to leave and threatened to call their attorneys because the children had been delivered late. In return, Alicia threatened to have Neil arrested. She brought out her telephone and began taunting him with it, stating that she could have him arrested with one call. Neil tried to grab it, but touched neither Alicia nor the telephone. When Neil returned from checking on the children, Alicia smiled at him while she told someone on the telephone that she was really frightened. Neil asked her to leave again. He went to the van and took the keys, telling her that she had to leave. He then put the keys in the driver's seat and had returned to the house when the police arrived.
{¶ 12} Officer Taylor stated that when he arrived Alicia was acting "in kind of a hysterical manner." He described her as crying, nervous, and angry. He stated that her hair was in disarray. She told him that her husband had assaulted her. He then testified to the details of the assault as related by Alicia. She showed him her bent fingernail. It was not bleeding. She told Taylor that Neil had grabbed her neck, but there were no marks there. When Neil came outdoors, he told Taylor that his wife and children were not supposed to be on the property.
{¶ 13} Taylor testified that when called to the scene of a potential domestic-violence incident, he was required to arrest the person that he determined was the primary aggressor. In this situation, he determined that Neil was the primary aggressor based on what he saw and on Alicia's comments and conduct.
{¶ 14} In his first assignment of error, Neil challenges the weight of the evidence supporting his conviction. He argues that Alicia was not credible because she lied under oath and because her testimony and her affidavit were inconsistent, as was her behavior at the time of the incident and her supposed fear. Neil also points out the trial court's struggle with whom to believe. The trial court explained that even though it did not believe all that Alicia had said, it was not required to "completely discount her testimony." It also believed that Taylor's testimony corroborated Alicia's story.
{¶ 15} When confronted with a challenge to the weight of the evidence, we review the entire record, weigh the evidence and all inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[1]
To reverse on this basis, we must "disagree with the factfinder's resolution of the conflicting evidence."[2] Because "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact," we may exercise our power to grant a new trial only in exceptional cases.[3]
{¶ 16} Neil's argument in support of this assignment is premised on Alicia's lack of credibility, including the trial court's statements concerning its struggle with her credibility. But as the trial court explained, it was free to believe all, part, or none of the testimony of each witness.[4] It obviously believed a part of Alicia's testimony. Having reviewed the record under the appropriate standard, we overrule Neil's first assignment.
{¶ 17} In his second assignment, Neil contends that the trial court erroneously admitted into evidence Alicia's statements to Taylor as excited utterances under Evid.R. 803(2). He argues that the statements were inadmissible because there was no testimony as to the time between the incident and Alicia's statements to Taylor. The trial court's decision to admit a declaration as an excited utterance "should not be disturbed on appeal if it was reasonable," because the determination "reflects a factual finding about whether the declarant was sufficiently startled."[5]
{¶ 18} There is also a temporal element to be met before a declarant's hearsay statement may be admitted under the excited-utterance exception found in Evid. R. 803(2). The statement "must be made while the declarant is still under the stress of the event and the statement maynot be the result of reflective thought."[6] The evidence in this case was that Alicia called for emergency assistance immediately after she had been assaulted, and that she "was in shock." She stayed on the telephone with the emergency operator until Taylor arrived. Taylor responded to the call, "running a Code 3." He testified that he had his cruiser's siren and lights activated, and was traveling 90 miles per hour to get to the scene because the incident sounded urgent. The trial court's decision to admit the statements was reasonable under the facts. We overrule Neil's second assignment.
{¶ 19} In his last assignment, Neil claims that the Hamilton County Sheriff's Department's policy mandating an arrest in any case of domestic violence was unconstitutional as applied to him, because Alicia's appearance at his house violated a restraining order, and because she had refused to leave. We first note that this issue was not raised below. Thus, we need not address it.[7] But we choose to do so in the exercise of our discretion.
{¶ 20} Taylor agreed that there was a mandatory arrest policy for potential domestic-violence situations and that he was required to arrest one of the parties if he was able to determine which party was the primary aggressor. He stated that Alicia had signed an affidavit and that he had determined that Neil was the primary aggressor based on Alicia's statements to him and the injuries he saw — the broken nail and the disheveled hair (presumably indicating hair-pulling).
{¶ 21} R.C. 2935.03(B) allows an arrest for domestic violence when the arresting officer has reasonable grounds to believe that the offense has been committed and reasonable cause to believe that a particular person has committed the offense. A written statement alleging that a certain person has committed domestic violence against the maker of the statement, or the arresting officer's personal knowledge and observations of the circumstances surrounding the alleged domestic violence, including any trustworthy information provided to the officer by the victim, constitutes reasonable grounds to believe that the offense has been committed and reasonable cause to believe that the accused person has committed the offense.[8] Where reasonable grounds to believe that the offense has been committed and reasonable cause to believe that a certain person has committed the offense exist, the preferred course of action is to arrest and detain the person without a warrant.[9] The language of R.C. 2935.03(B) "articulates the traditional standards of probable cause to arrest and applies such standards to the offense of domestic violence."[10]
{¶ 22} Because the standards of R.C. 2935.03 were satisfied in this case, we conclude that Neil has failed to demonstrate that the mandatory-arrest policy, as it applied to the facts of this case, was unconstitutional. We overrule Neil's third assignment.
{¶ 23} Therefore, we affirm the trial court's judgment.
Judgment affirmed.
Doan, P.J., and Hildebrandt, J., concur.
[1] See State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[2] State v. Thompkins (1997), 78 Ohio St.3d 380, 387,678 N.E.2d 541.
[3] See State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[4] See State v. Antill (1964), 176 Ohio St. 61, 197 N.E.2d 548.
[5] State v. Whitfield, 1st Dist. No. C-020241, 2002-Ohio-5984, ¶ 7.
[6] State v. Taylor (1993), 66 Ohio St.3d 295, 303, 612 N.E.2d 316.
[7] See State v. Awan (1986), 22 Ohio St.3d 120, 489 N.E.2d 277, syllabus; In re M.D. (1988), 38 Ohio St.3d 149, 527 N.E.2d 286, syllabus.
[8] See R.C. 2935.03(B)(3)(a).
[9] R.C. 2935.03(B)(3)(b).
[10] State v. Carbone (Dec. 19, 1997), 11th Dist. No. 96-T-5390.