OPINION
{¶ 1} Appellant, Jitander N. Kalia, appeals from the January 24, 2002 judgment entry of the Warren Municipal Court, in which he was found guilty of misdemeanor sexual imposition and sentenced to jail.
 {¶ 2} Appellant was charged with two counts of sexual imposition on July 17, 2001, for alleged acts that occurred on or around June 13, 2001. A jury trial took place on January 14, 2002.
 {¶ 3} At the trial, the state called Veronica Carkido ("Veronica") to the stand and she related that she was employed as a secretary for appellant, who is a physician. Sometime in October 2000, at appellant's office, he grabbed her foot and started to rub it. Veronica claimed that she "immediately yanked [her foot] away." A bit later, he "walked back up and he grabbed [her] by the chin and then put his other arm around [her] neck and tried to kiss [her]. He sucked in [her] bottom lip." Angela R. Dejanovic ("Angela") testified that she was not at work that day, but about thirty to forty-five minutes after the incident occurred, she stopped into the office to pick up her paycheck. It was at that time she saw Veronica, who looked very upset. Angela asked Veronica what was wrong. She noticed Veronica's eyes were very glassy. Veronica proceeded to tell Angela what had transpired.
 {¶ 4} On December 13, 2000, Veronica testified that appellant grabbed her by the arm and pulled her into an examination room. He shut the door, attempted to kiss her, and "unsnapped [her] bra." She left the examination room and "immediately walked up front and told [Angela] about what had just happened." Veronica explained that she "was shocked that he did this again." She also stated that she was very upset and that she felt sick to her stomach. She further testified that as soon as she walked up front Angela asked her what was wrong because her face was pale. Angela verified that Veronica "looked very upset" as she left the examination room and came around the corner. Angela also mentioned that she asked Veronica what had happened, and Veronica replied that appellant did it again.
 {¶ 5} Veronica also testified that on May 25, 2001, she and Dawn Neeld ("Dawn"), a fellow employee, went to Bailey's Pub and found a seat. Appellant arrived and sat next to Dawn. Appellant tried to feel Dawn's legs and kept moving closer to her. According to Veronica and Dawn, appellant asked Dawn if she "would * * * like to fuck [her] son's pediatrician." Dawn was in awe and after that both she and Veronica excused themselves and went to the restroom. They revealed that they tried to avoid appellant by dancing. However, appellant entered the dance floor and grabbed Dawn's breasts. Dawn indicated that appellant tried to put his hand up her shirt. He also touched her thighs and attempted to kiss her. A few minutes later, Veronica and Dawn left the bar.
 {¶ 6} On cross-examination, Veronica related that on May 25, 2001, she, Dawn and appellant were together in the car, and that she took Dawn home first and then she took appellant back to Bailey's Pub. She admitted that she had been to lunch with appellant between October 2000 and June 2001. However, she explained that she never went to lunch with him alone. Both Veronica and Dawn testified that prior to June 21, 2001, neither of them reported the incident to the police.
 {¶ 7} At the close of the state's case-in-chief, appellant moved for a Crim.R. 29 acquittal, which was overruled.
 {¶ 8} Appellant took the stand and described his version of the events that occurred in October 2000.[1] He explained that while he was sitting at the computer, Veronica approached him about a pain in her heel and how another doctor advised her to use steroid injections. According to appellant, since he had a background in orthopedics, he began to examine Veronica's foot and told her it was his opinion that steroids were unnecessary as he examined her foot. He then stated that Veronica "suddenly, without warning, * * * put her second (2nd) foot on [his] leg." This took appellant by surprise and he explained that Veronica "had that look" and she was "a very attractive woman." Appellant could not recall who suggested that the two of them proceed to the examination room. However, in that room, they kissed and "did some petting."
 {¶ 9} Appellant testified that he and Veronica developed a relationship in the sense that they "had a routine of petting whenever [they] got the opportunity." Appellant characterized petting as hugging, kissing, and touching her breasts. He indicated that at first he did not have intercourse with Veronica and that she was as interested in him as he was in her. In May 2001, shortly after he released Angela from her job, Veronica called and invited him to her home. When he arrived there, she was in a nightie and the two of them had sex. According to appellant, the two of them continued to have a sexual relationship for several weeks. In June 2001, appellant explained that when he and Veronica were supposed to have sex, Veronica told him that she was not in the mood and that she was in another relationship. She mentioned that in addition to her husband, she was having an affair with another man and that she could not handle three men in one day. After hearing this, appellant claimed that he did not engage in intercourse with Veronica for a while.
 {¶ 10} As to the Bailey's Pub incident, appellant stated that he was invited by Dawn. He revealed that he had no sexual contact with Dawn that night and that he was never interested in her in that way. According to appellant, after he and Veronica dropped Dawn off at home, they went to appellant's office where they had sex. Appellant testified that Dawn was interested in him, and he never showed her any interest.
 {¶ 11} Appellant further related that Dawn and Veronica attempted to steal money from him. As a result, he terminated Dawn's employment on June 22, 2001, and on that same day, Veronica resigned. It was after this day, that the two women hired an attorney to pursue a lawsuit against appellant. Appellant did not renew his Crim.R. 29 motion for acquittal at the close of his case.
 {¶ 12} The jury found appellant guilty of one count of sexual imposition, which involved Veronica, but not guilty of the sexual imposition count that involved Dawn. In an entry dated January 24, 2002, appellant was fined $500 and sentenced to sixty days in jail, which was suspended. Appellant was to have no contact with the complaining witness and was to serve one hundred hours of community service. It is from that entry that appellant timely filed the instant appeal and now assigns the following as error:
 {¶ 13} "[1.] The trial court erred to the prejudice of [appellant] in permitting hearsay testimony to establish corroboration of the offense.
 {¶ 14} "[2.] The conviction was against the manifest weight and sufficiency of the evidence."
 {¶ 15} For his first assignment of error, appellant claims that the trial court erred in allowing hearsay testimony to establish corroboration of the offense where forty-five minutes elapsed between an occurrence and a conversation about the occurrence.
 {¶ 16} The decision of a trial court to admit a statement as an excited utterance under Evid.R. 803(2) will not be reversed absent an abuse of discretion. State v. Shelton, 11th Dist. No. 2001-P-0050,2002-Ohio-5157, at ¶ 23. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 17} Evid.R. 803(2), provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," is an admissible exception to the hearsay rule. For an alleged excited utterance to be admissible, the following must exist: (1) an event that was startling enough to produce a nervous excitement in the declarant; (2) the statement must have been made while under the stress of excitement caused by the event; (3) the statement must relate to the startling event; and (4) the declarant must have personally observed the startling event.State v. Taylor (1993), 66 Ohio St.3d 295, 300-301.
 {¶ 18} In addition, when determining whether a statement is an excited utterance, the court should consider: (a) the lapse of time between the event and the declaration; (b) the declarant's mental and physical condition; (c) the nature of the statement; and (d) the influence of intervening circumstances. State v. Humphries (1992),79 Ohio App.3d 589, 598. "There is no per se amount of time after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement maynot be a result of reflective thought." Taylor, supra, at 303.
 {¶ 19} Moreover, "[t]he admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." State v. Wallace (1988), 37 Ohio St.3d 87, paragraph two of the syllabus.
 {¶ 20} In the case at hand, after reviewing the testimony of Veronica and Angela, it is our view that Veronica's statements in regard to the December incident were made before there had been time for the stress of excitement caused by the event to dissipate. Upon appellant attempting to kiss her and unstrap her bra, Veronica immediately proceeded a very short distance to the front of the office where Angela observed that her face was pale and asked her what was wrong. To this, Veronica replied that appellant did it again. Therefore, the statements were contemporaneous in nature and were not influenced by any intervening circumstances. Angela's recollection of Veronica's statements reveals that the declarant's statements were made while she was still under the stress of the event. Veronica's statements were not the result of reflective thought; instead, they were her recollection of the startling event that she had just experienced. Further, it is our position that Angela's question served to initiate the conversation with Veronica immediately following the foregoing episode. However, nothing in the record manifests that Angela's question was coercive, nor did it destroy the domination of nervous excitement over her faculties.
 {¶ 21} Furthermore, under the circumstances of this case, the complainant's version of events, if believed, would cross the threshold of satisfying the elements of an excited utterance. However, we note that with the fact predicate as exists in this record, the analysis of an excited utterance exception to the hearsay rule takes on a hybrid chemistry of more of a subjective state in the victim's reaction to a more objective requirement of what is a startling occurrence which produces a contemporaneous excited utterance. We would caution that this court's opinion on this issue in this case is not to be viewed as an opening of the floodgates to the objective test factors required for this exception to the hearsay rule.
 {¶ 22} Although it is our view that the December incident should have been admitted as an excited utterance, it is also our position that it was error for the trial court to allow the October incident to be admitted as an excited utterance. However, this error was harmless because it did not rise to the crest of a significant sexual contact.
 {¶ 23} Since the trial court properly determined that Angela's testimony regarding Veronica's statements were admissible under the excited utterance exception to the hearsay rule, we conclude that the trial court's admission of Angela's testimony relating the statements Veronica made to her was not unreasonable, arbitrary or unconscionable, and thus, was not an abuse of discretion. Appellant's first assignment of error lacks merit.
 {¶ 24} Under the second assignment of error, appellant alleges that his conviction was against the manifest weight of the evidence as the evidence did not prove beyond a reasonable doubt that he touched an erogenous zone of another.[2]
 {¶ 25} In deciding if a verdict is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs all the evidence and reasonable inferences stemming therefrom, and considers the credibility of the witnesses. State v. Thompkins (1997),78 Ohio St.3d 380, 387; State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 WL 738452, at 5. The trier of the facts has the primary responsibility for determining the "* * * weight to be given the evidence and the credibility of the witnesses * * *." State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. After we conduct our review of the record, if we conclude that the jury lost its way, we will reverse the conviction. State v. Beaver (1997), 119 Ohio App.3d 385,398.
 {¶ 26} In the case at bar, the prosecution presented three witnesses. Appellant presented his own testimony. There was adversarial testimony between appellant and Veronica with respect to the events that transpired in October and December 2000. On re-direct examination, the following exchange took place between the prosecutor and Veronica:
 {¶ 27} "Q. Has there ever been any sexual contact between the two (2) of you with your consent?
 {¶ 28} "A. No.
 {¶ 29} "* * *
 {¶ 30} "Q. Okay. How is it that you know there's an inflatable bed in the office?
 {¶ 31} "A. * * * I came back to the office after my lunch. It [the inflatable bed] was blown up in the hallway in the back * * *."
 {¶ 32} After reviewing the transcript, we cannot say that the jury lost its way and created such a miscarriage of justice so that the conviction must be reversed. The jury found the state's witnesses to be more credible. Therefore, this court will not substitute our judgment for that of the jury. We conclude that based on the witnesses presented by the prosecution, the state proved beyond a reasonable doubt the necessary elements of sexual imposition. Further, there was adequate evidence that the jury could find credible evidence upon which to base the conviction. Appellant's second assignment of error is without merit.
 {¶ 33} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Warren Municipal Court is affirmed.
DIANE V. GRENDELL, J., CYNTHIA WESTCOTT RICE, J., concur.
[1] We note that there was adversarial testimony with respect to what occurred during the October and December situations. Furthermore, appellant claims that he and Veronica had a sexual relationship. Yet, in Veronica's testimony, she denies ever having consensual sexual contact with appellant at any time.
[2] This court cannot address any issue regarding the sufficiency of the evidence, as appellant did not renew his Crim.R. 29 judgment of acquittal.