[Cite as *State v. Boss*, **2017-Ohio-697**.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| JORDAN M. BOSS | : | Case No. 16-COA-026 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeal from the Ashland County
                               Municipal Court, Case No.
                               16CRB00407

JUDGMENT:                      Affirmed

DATE OF JUDGMENT:              February 24, 2017

APPEARANCES:

For Plaintiff-Appellee

ANDREW N. BUSH
Assistant Director of Law
1213 E. Main Street
Ashland, Ohio 44805

For Defendant-Appellant

JOSEPH P. KEARNS, JR.
Mason, Mason & Kearns
P.O. Box 345
153 West Main Street
Ashland, Ohio 44805

*Baldwin, J.*

{¶1} Defendant-appellant Jordan Boss appeals his conviction and sentence from the Ashland Municipal Court on one count of domestic violence. Plaintiff-appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2} On March 31, 2016, a complaint was filed charging appellant with domestic violence in violation of R.C. 2919.25(C), a misdemeanor of the fourth degree. At his arraignment on April 4, 2016, appellant entered a plea of not guilty to the charge.

{¶3} Subsequently, a jury trial was held on June 15, 2016. At the trial, Officer Jeremy Jarvis of the Ashland Police Department testified that on March 31, 2016, he was dispatched to an address in the City of Ashland in response to a domestic violence 911 call. The 911 call was played for the jury over objection. Officer Jarvis testified that when he arrived at the address, he spoke with Tesa Boss, appellant's wife. According to the Officer, she was "very scared and nervous" and appeared to have been crying. Transcript at 32. Officer Jarvis testified that he arrived at the address within minutes after he was called and that Tesa Boss locked the door behind him, leading him to believe that Tesa Boss was scared that appellant was coming back. Officer Jarvis indicated that ten minutes had transpired between the time of the incident and his arrival.

{¶4} Over objection, Officer Jarvis testified that Tesa Boss told him that during an argument, appellant had pushed her down while she had their seven month old daughter in her arms. Neither was injured. While Tesa Boss was not crying while recounting the incident, she, according to the Officer, appeared "very nervous/scared." Transcript at 38. Officer Jarvis further testified that Tesa Boss told him that she went into

another room in the apartment and later told appellant that she was going to pack up some of his clothes and his Play Station 4 and put them out in the hallway. Appellant, in response, told her that he would kill her if she messed with his Play Station.

{¶5}    Officer Jarvis made contact with appellant, who had left the apartment, and spoke with him. When asked about the push, appellant told the Officer that it was a "nudge" and that his wife did not fall down. Transcript at 41. He denied that his wife was holding their child at the time. Appellant told Officer Jarvis that he did not think that he had threatened to kill his wife.

{¶6}    On cross-examination, Officer Jarvis testified that he did not see Tesa Boss crying, but that it appeared that she had been crying. He did not know if she had been crying.

{¶7}    Prior to trial, Tesa Boss had recanted the allegations made to Officer Jarvis in a sworn statement. She was called as a Court's witness and invoked the Fifth Amendment.  On cross-examination, she testified that, on March 31, 2016, her husband's shoulder brushed up against her, causing her to fall. She denied that there was any other physical contact between her and appellant. She testified that she did not fear that appellant was going to cause her any harm. When asked why she had called 911, Tesa Boss testified that she had panic attacks and mental health issues that caused her to overreact.  She testified that it was her voice on the 911 call.

{¶8}    Appellant testified at trial. He denied threatening to kill his wife or having physical contact with her, other than bumping her shoulder while walking past her.

{¶9}    At the conclusion of the evidence and the end of deliberations, the jury, on June 15, 2016, found appellant guilty of domestic violence. Appellant was sentenced to

thirty (30) days in jail with twenty (20) days suspended and was placed on probation for a period of one year under specified conditions.

**{¶10}** Appellant now raises the following assignments of error on appeal:

**{¶11}** THE TRIAL COURT ERRED WHEN IT RULED THAT 911 TAPES WERE ADMISSIBLE AT TRIAL.

**{¶12}** THE TRIAL COURT ERRED WHEN IT PERMITTED THE ADMISSION OF HEARSAY EVIDENCE AT TRIAL.

**{¶13}** THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

I

**{¶14}** Appellant, in his first assignment of error, argues that the trial court erred in allowing, over objection, a 911 audiotape of the victim's call to 911 to be played for the jury.

**{¶15}** The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218, 450 N.E.2d 1140.

**{¶16}** Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible, subject to several exceptions. Evid.R. 802, 803.

**{¶17}** In the case sub judice, the State argued that the audiotapes came in under the business records exception to the hearsay rule. Appellee, in its brief, concedes that 911 recordings are not necessarily business records for hearsay purposes, but argues that 911 recordings very often qualify as excited utterances. We note that any error in admitting the tape of the victim's 911 call to police at trial is harmless, even if the trial court improperly admitted the tape as a business record, if the tape could have been admitted under the excited utterance exception to the hearsay rule. See *State v. DeMoss,* 2nd Dist. Champaign No. 2001–CA–5, 2002-Ohio-1193.

**{¶18}** Evid R 803 Hearsay exceptions; availability of declarant immaterial provides,

**{¶19}** The following are not excluded by the hearsay rule, even though the declarant is available as a witness:….

**{¶20}** **(2) Excited utterance.** A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

**{¶21}** Evid.R. 803(2). A four-part test is applied to determine the admissibility of statements as an excited utterance:

(a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual

impressions and beliefs, and thus render his statement of *425 declaration spontaneous and unreflective,

(b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs,

(c) that the statement or declaration related to such startling occurrence or the circumstances of such starling occurrence, and

(d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.

**{¶22}** *State v. Jones,* 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 166 (citations omitted).

**{¶23}** The statement need not be made during the course of the startling event. Rather, it is only necessary that the declarant still appeared nervous or distraught and that there was a reasonable basis for continuing to be emotionally upset. In addition, we note that there is no specific amount of time after which a statement can no longer be considered as an excited utterance and not the result of reflective thought. *State v. Taylor,* 66 Ohio St.3d 295, 612 N.E.2d 316 (1993).

{¶24} Upon our review of Tesa Boss' statements on the 911 call, we find that the same qualified as an excited utterance. While Tesa Boss sounded calm during the 911 call, her voice was shaky when she described how appellant had pushed her and her daughter down and threatened to kill her. We find no error in the trial court's admission of the 911 call because it related to the startling event; was made by Tesa Boss, who had firsthand knowledge of the event, and it was made while she was under the stress of the excitement caused by the assault by her husband.

{¶25} Appellant's first assignment of error is, therefore, overruled.

II

{¶26} Appellant, in his second assignment of error, argues that the trial court erred when it permitted Officer Jarvis to testify, over objection, to statements that Tesa Boss made to him.

{¶27} At trial, Officer Jarvis testified that when he arrived at the apartment, Tesa Boss seemed very scared and nervous and locked the door behind him. He further testified that it looked like she had been crying and that it took him minutes to respond after receiving the call from dispatch. Officer Jarvis, when asked, agreed that it seemed odd that Tesa Boss locked the door behind him and that "that kind of told me that she was scared he [appellant] was coming back." Transcript at 33. He later testified that he arrived on the scene within ten minutes of the incident and that when he arrived, Tesa Boss still appeared to be upset and distraught. We find that the statements to Officer Jarvis were made while Tesa Boss was still upset, nervous and distraught over the incident.

**{¶28}** Based on the foregoing, we concur with appellee that Tesa Boss' statements to the Officer qualified as an excited utterance because she still remained under the stress of a violent event.

**{¶29}** Appellant's second assignment of error is, therefore, overruled.

III

**{¶30}** Appellant, in his third assignment of error, argues that his conviction was against the manifest weight of the evidence.

**{¶31}** In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.* We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159.

**{¶32}** Appellant, in the case sub judice, was convicted of domestic violence in violation of R.C. 2919.25(C). Such section states that "[n]o person, by threat of force, shall

knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member.

{¶33} At the trial in the matter, the 911 call was played for the jury. During the call, Tesa Boss stated that appellant had threatened to kill her. Officer Jarvis testified that she told him that appellant had threatened to kill her if she "messed" with his Play Station 4 and that when he spoke with appellant, appellant "said that he did not think that he said he would kill her." Transcript at 42. The Officer testified that Tesa Boss appeared to be very nervous and scared and was distraught.

{¶34} Based on the foregoing, we cannot say that the jury lost its way in convicting appellant of domestic violence.

{¶35} Appellant's third assignment of error is, therefore, overruled.

{¶36} Accordingly, the judgment of the Ashland County Municipal Court is affirmed.

By: Baldwin, J.

Gwin, P.J. concurs

Hoffman, J. concurs separately.

*Hoffman, J., concurring*

**{¶37}**  I concur in the majority's analysis and disposition of all three of Appellant's assignments of error. I write separately only to note I find the majority's citation to *State v. Sage,* (1987) 31 Ohio St.3d 173, unnecessary and potentially misleading.

**{¶38}**  There is no dispute the 911 tape was relevant. The standard of review set forth in *Sage* pertains to the trial court's determination of relevancy.  I continue to maintain the abuse of discretion standard of review does not apply to all evidentiary rulings of the trial court.